**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA,          )<br>                                                            )<br>                        Plaintiff,          )<br>                                                            )<br>vs.                                                       )<br>                                                            )<br>TERRANCE CHRISTOPHER,          )<br>                                                            )<br>                        Defendant.        )<br>_____) | Case No.  2:14-cr-00274-KJD-CWH<br><br>**ORDER** |

This matter was referred to the undersigned Magistrate Judge on Defendant's Motion to Suppress Evidence for Fourth Amendment Violations (#20), filed October 31, 2014; the Government's Response (#23), filed December 1, 2014; and Defendant's Reply (#24), filed December 5, 2014.  An evidentiary hearing was conducted on December 23, 2014.

### I.  BACKGROUND

On August 13, 2014, Terrance Christopher was indicted on one count of Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924 (a)(2). (#1).  The indictment stems from the search of Christopher's vehicle and home on July 31, 2014.  The searches occurred on the same day that Christopher reported to the Nevada Division of Parole and Probation ("Probation") to meet with a probation officer regarding a sentence received from a state court judge on June 24, 2014.  Christopher contends that both searches were illegal and that the evidence seized as a result of the searches must be suppressed.

At the evidentiary hearing, Officer Gregory Kenyon ("Kenyon") testified that he has been employed by the Nevada Division of Parole and Probation for about one year.  On July 31, 2014, Christopher reported to Probation for the purpose of enrolling and becoming subject to supervision.

Kenyon testified that he was generally aware of Christopher's state case through a records review. One of those records indicated that Christopher had admitted to the use of marijuana on or about June 25, 2014. The admission resulted from a drug test administered immediately after Christopher had been convicted and reported to Probation. Another record contained Christopher's address, and indicated that he had been convicted of larceny from a person and had been sentenced on June 24, 2014.

At the July 31, 2014 intake meeting, Officer Kenyon administered a routine drug test which was positive for marijuana. Christopher then completed a form admitting that he had used marijuana. Kenyon discussed the prohibition against the use of drugs during probation applied even if Christopher had a medical marijuana card, as he claimed. Kenyon then conducted an intake interview to orient Christopher on his responsibilities and to obtain his signature on what were characterized as standard forms and documents. Kenyon testified that he was provided with documents to conduct the intake process, including an "Order Admitting Defendant to Probation and Fixing the Terms thereof." The form was unsigned and undated at the time of the intake meeting. It was issued by the Nevada Department of Public Safety and indicated that Christopher had been found guilty of Larceny from a Person, sentenced to imprisonment for 12-36 months, owed $1,225 in restitution, that execution of the sentence was suspended, and that "Defendant is hereby admitted to probation for an indeterminate period not to exceed 3 years." *See* Gov't Ex 3. The form then lists 12 conditions of probation and incorporates a second page containing six additional special conditions of probation. *Id.*

Officer Kenyon testified that he reviewed all of the probation conditions with Christopher, asked him if he had any questions, and that Christopher signed both pages of the form indicating that he agreed to abide by the terms of probation. Kenyon testified that if Christopher failed to sign the form he could be arrested for failure to comply with condition eight, which requires that the probationer comply with the directives of Probation. Kenyon was not present when Christopher was sentenced and was not aware of what the judge said during sentencing. He testified that the form is normally sent to probation without signatures, and is returned to the judge for signature after it is signed by the probationer. In this case, the form which Christopher signed on July 31,

2014, appears to have been signed by Judge Villani on September 8, 2014, and e-filed on September 11, 2014. *Id.*

Condition six on the form provides as follows:

> "Search: You shall submit your person, property, place of residence, vehicle or areas under your control to search including electronic surveillance or monitoring of your location, at any time, with or without a search warrant or warrant of arrest, for evidence of a crime or violation of probation by the Division of Parole and Probation or its agent."

During the intake meeting, Christopher was asked how he had gotten to the intake appointment. He told Officer Kenyon that he had taken the bus. When asked to show a bus pass, Christopher changed his story and said that he had driven his vehicle to the meeting. Due to the change in story, Kenyon testified that he became suspicious and assumed that Christopher had something to hide in his vehicle. On cross-examination, he indicated that it was his training officer, Officer Adrian Lindquist, who was also present, who decided to conduct the search of Christopher's vehicle. Christopher provided the keys to his vehicle, was handcuffed, and accompanied the probation officers to his vehicle.

The officers conducted a search of the vehicle, recovering a pink purse containing identification cards for a female from the trunk. When questioned, Christopher indicated he thought the purse and its contents belonged to a woman he had met the previous evening, but he could not identify the woman. The inability to identify the woman made Officer Kenyon suspicious and triggered the decision to search Christopher's home. Kenyon informed Christopher that they were going to search his residence. Kenyon further testified that probation officers typically conduct a home visit within 30 days of intake, but that a visit for Christopher had not yet been scheduled. Christopher provided the key allowing access to the apartment. Officers recovered a firearm, evidence of financial crimes (passports and credit cards), marijuana, and other items linking Christopher to the specific room in which the evidence was discovered during the search. Thereafter, Metropolitan Police Firearms Division and Financial Crimes were contacted to follow up on the investigation and, eventually, obtained a search warrant authorizing the seizure of the evidence now sought to be suppressed.

Officer Adriana Lindquist ("Lindquist"), an employee of the Nevada Probation and Parole

Division for eight years, testified that she was serving as Officer Kenyon's Training Officer on July 31, 2014. She observed the intake meeting conducted by Kenyon. She testified that she was familiar with the form completed by Christopher, and that the general rules of probation, identified as conditions one through thirteen on the first page of the form are the same for all probationers. She further testified that the additional six special conditions were specific to Christopher as set by the sentencing judge. She testified that probationers generally are asked how they arrived at Probation to obtain information about whether they own a vehicle and have a driver's license. Such information would also be helpful if Probation conducted a home visit – if the vehicle was at the home, it would be likely that probationer was there.

When Officer Lindquist determined that Christopher was untruthful about his means of transportation to intake, she "invoked the search clause" because she wanted to know the reason for his being untruthful due to his positive drug test earlier that day.[1] She was aware that Christopher claimed that he had a medical marijuana card from California. On cross examination, she conceded that the positive drug test does not indicate the level of marijuana that was discovered or whether it might be residual from a previous drug use, such as the one discovered on June 24, 2014. She also testified that testing positive on a drug test would be a probation violation. She made the decision to search Christopher's because his explanation of the presence of the pink purse in his vehicle made her more suspicious. She testified that during both searches she was looking for anything illegal or that would be a violation of probation. Officers were not looking for anything in particular. She did not make any effort to contact the owner of the purse or its contents.

Detective Frank Bien, a Las Vegas Metropolitan Police Department firearms investigator, indicated that he went to Christopher's home after being contacted by probation. After being briefed by the probation officers, he conducted a search of the home and located various evidence including the firearm, marijuana, passports and credit cards not belonging to the inhabitants of the apartment. He subsequently applied for and received a search warrant in order to seize the evidence discovered during the search.

---

[1] She did not recall that Christopher had previously tested positive for the use of marijuana.

In his motion, Christopher argues that, even as a probationer, he enjoys certain Constitutional protections. He argues that a search of a probationer must be reasonable, as determined by weighing the individual's privacy interests against the government's need for the search. Arguing that terms of probation are set by the court and not probation, he argues that the only probationary conditions imposed by the judge during sentencing were the six special conditions, which did not include a search clause or the other standard conditions. He further argued that he was never made aware of "search clause." He argues that, under Nevada law, the search of a probationer's property who is subject to a search condition must be based upon "reasonable grounds" to believe a crime has been committed or a violation of probation has occurred. If there is no search clause, then such a search may only be conducted if there is a greater justification than "reasonable grounds," either reasonable suspicion or probable cause.

The government responds that reviewing and signing the conditions of Probation are standard procedures, and that Christopher consented to the search of his vehicle and home by signing the terms of probation. Additionally, it argues that the searches of the vehicle and home were reasonable based upon Christopher's diminished expectation of privacy, the legitimate governmental interest to ensure compliance with conditions of probation, and the totality of the circumstances.

In Reply, Christopher argues that he did not voluntarily consent to the search clause, but signed in acquiescence to a claim of lawful authority. He further contends that he was not subject to a search clause because it was not properly imposed by the court, but rather by Probation.

## II. DISCUSSION

The Fourth Amendment addresses "the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. Amend. IV. The Fourth Amendment protects reasonable and legitimate expectations of privacy. *Katz v. United States*, 389 U.S. 347 (1967). It protects "people not places." *Id*. Evidence obtained in violation of the Fourth Amendment and evidence derived from it may be suppressed as the "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471 (1963). Because warrantless searches and seizures are *per se* unreasonable, the government bears the burden of showing that a

warrantless search or seizure falls within an exception to the Fourth Amendment's warrant requirement. *United States v. Cervantes*, 703 F.3d 1135, 1141 (9th Cir. 2012). To meet this burden, the government argues that Christopher was subject to a search clause as a condition of his probation.

When a person is found guilty in a Nevada district court of a felony, gross misdemeanor or misdemeanor, the court may suspend the execution of the sentence imposed and grant probation as the court deems advisable. Pursuant to NRS 176A.100(c), "the court may suspend execution of the sentence imposed and grant probation <u>as the court deems advisable</u>." NRS 176A.100(c) (emphasis added). It is clear under Nevada law that the terms and conditions of probation are set by the court, not probation. *See* NRS § 176A.400(1) ("In issuing an order granting probation, <u>the court</u> may fix the terms and conditions thereof[.]") (emphasis added). The dispute here is not whether Christopher was placed on probation. He concedes as much. He disputes, however, whether the court fixed a search provision as a condition of his probation.

The only evidence addressing the terms and conditions of Christopher's probation is Government Exhibit 3, which was a previously unsigned form presented to him on July 31, 2014 for his signature. Under Nevada law, a person on probation must submit a form to the court that he will comply with the terms of probation. *See* Nev. Rev. Stat. Ann. § 176A.210(2)(a) ("Upon entry of an order of probation by the court, a person . . . shall submit to [Probation] for filing with the clerk of the court of competent jurisdiction a signed document stating that . . . the person will comply with the conditions which have been imposed by the court and are stated in the document[.]"). Exhibit 3 appears to be the document created by Probation to assist probationers to comply with this statute.

There is little question that the document, entitled "Order Admitting Defendant to Probation and Fixing the Terms Thereof," was not a court order establishing specific conditions until it was signed by a judge on September 8, 2014. It was not signed by a judge until well after the searches in question. Accepting that Christopher's sentence was suspended and he was placed on probation, the Government has not provided any credible evidence establishing that the conditions contained within Exhibit 3, specifically the search provision, were imposed by the court at the time of

sentencing or prior to the intake meeting.

The Court specifically rejects the testimony by Officer Lindquist that all probationers receive the same standard conditions of probation and, therefore, it is safe to assume Christopher received those conditions as well. First, there is nothing in the statutory scheme indicating that there are set "standard" conditions applicable to all individuals subject to probation. To assume otherwise would necessarily divest a sentencing judge of the wide discretion granted by the statute in fashioning appropriate conditions in most situations.[2] Second, assuming there are standard conditions, it is incorrect to assume that some or all of those standard conditions could not be withdrawn or modified upon order of the court. Establishing whether a set of "standard conditions" apply would not be difficult as, presumably, the sentencing officer would make some indication that such conditions apply. It would be equally useful if the allegedly "standard conditions" were identified as such on the document, but they are not. Additionally, though not admitted into evidence, the undersigned has reviewed the transcript from the sentencing hearing at which the court discussed several special conditions of probation (such as restitution), but made no mention of any other applicable conditions. The Government has not submitted any authority for the proposition that specific terms of probation, even those characterized as "standard," would apply in the absence of any indication, either verbally or in writing, from the court.

The Court is mindful that, eventually, the conditions presented at hearing were ratified by the sentencing judge. There is, however, no indication that they had been ordered at the time of the intake meeting and resulting search. Nevada law is clear, the court determines the conditions of probation and conditions that have neither been announced nor entered are not assumed to exist. Otherwise, the ability to set or alter probation conditions would fall to the probation officer, a result which is inconsistent with Nevada law and unintended by the sentencing judge. The undersigned notes that the document presented to Christopher was not signed by a judicial officer at the time it was presented. There is no evidence suggesting that Christopher was subjected to a "search

---

[2] There are circumstances where Nevada law does impose mandatory conditions, but there is nothing to suggest those circumstances are present here. *See* NRS 176A.410 ("Required terms and conditions for sex offenders").

condition" as a result of a court order at the time of the search in question.  Thus, the undersigned concludes that the Government has not met its burden to show that the "search clause" exception to the Fourth Amendment warrant requirement was in effect.[3]

The Government also argues that, when he completed his intake interview at Probation, Christopher consented to the search clause as a term of probation.  Indeed, Officer Kenyon testified that had Christopher failed to sign the probation papers as presented, he would have been immediately arrested and his failure to sign would be a violation of the terms of his probation.  There is no indication that Christopher was made aware of this likelihood.

The government has the burden of proving that consent to a search was voluntary, *see Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973), and must do so by a preponderance of the evidence.  *See United States v. Matlock*, 415 U.S. 164, 177 (1974).  Whether or not consent was voluntary is determined from the totality of all the circumstances. *See Pavao v. Pagay*, 307 F.3d 915, 919 (9th Cir. 2002).  Notably, however, "the government's burden to show voluntariness cannot be discharged by showing no more than acquiescence to a claim of lawful authority." *United States v. Perez-Lopez*, 348 F.3d 839, 846 (9th Cir. 2003) (citation and internal quotation marks omitted).  "Voluntariness is a question of fact to be determined from all the surrounding circumstances." *United States v. Kaplan*, 895 F.2d 618, 622 (9th Cir. 1990).

Here, Officer Kenyon testified that he read and explained to Christopher each condition of probation as set forth in the form, and then obtained his signature.  The form indicates that the execution of sentence is suspended and the defendant is admitted to probation "under the following conditions, and then lists the thirteen conditions."  There is no indication that Christopher was made aware that he had a choice as to whether to sign.  It is apparent, however, that Christopher signed the form in acquiescence to a claim of lawful authority; namely, the probation officer telling him that he was subject to the listed terms of probation.  This "consent" in reliance on the representation that the court had imposed these conditions is invalid because, as already

---

[3] The Court went so far as to highlight this issue near the end of the evidentiary hearing, but the Government declined to offer additional evidence.

determined, there is no evidence that all of the conditions of probation, including the search clause, had been properly imposed. *See Bumper v. North Carolina*, 391 U.S. 543, 549-550 (1968) (A search conducted in reliance upon a warrant cannot later be justified on the basis of consent if it turns out that the warrant was invalid.) Consequently, the Government has not met its burden to demonstrate that Christopher freely and voluntarily consented to the search clause.

The Government next argues that because Christopher was on probation, he had a lesser expectation of privacy, and therefore the search was reasonable. The Government relies upon *Sampson v. California*, 547 U.S. 843 (2006). The premise of *Sampson*, however, was that there was a court ordered search clause in effect at the time of the search. The Government cites no case in support of the proposition that a probationer who is not subject to a search clause has a diminished expectation of privacy.

Christopher's status of being on probation does not, standing alone, lead to a diminished expectation of privacy, or waive the normal warrant requirement. *Sampson* held that the California statute which allowed the search of a parolee pursuant to a search clause that allowed a search with or without a warrant or reasonable cause did not violate the Fourth Amendment. *Id.* At 846. Nevada has no such statute but, instead, would require "reasonable grounds" to implement a search clause. *See Seim v. State*, 590 P.2d 1152, 1154 (Nev. 1979) (interpreting a probationary search provision, holding that in order to justify a warrantless search by a probation officer, the officer must have reasonable grounds to believe that a violation of the parole or probation has occurred); *see also United States v. Knights*, 534 U.S. 112, 121 (U.S. 2001) (when an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, intrusion on the probationer's significantly diminished privacy interests is reasonable.).[4]

In order to apply the "reasonable grounds" standard, the search condition must have been in

---

[4] A probation search is permissible if conducted pursuant to a state law that satisfies the Fourth Amendment's reasonableness standard. *United States v. Conway*, 122 F.3d 841, 842 (9th Cir. Wash. 1997)(citing *Griffin v. Wisconsin*, 483 U.S. 868 (1987)). The Ninth Circuit instructs that it is necessary to look to Nevada's interpretation of its probation terms to determine the meaning and scope of a search clause. *See United States v. King*, 736 F.3d 805, 807 (9th Cir. 2013). Once the meaning and scope of a search clause are determined, under state law, then the federal Fourth Amendment analysis begins. *Id*.

effect, and there is no evidence establishing it was in effect at the time of the searches in this case. Officer Lindquist testified that when she realized that Christopher had been untruthful about his means of transportation to Probation, she "invoked the search clause" and decided to search Christopher's vehicle, resulting in the pink purse, and his home, resulting in the evidence to be suppressed. However, the Government has failed to meet its burden that the warrantless searches were lawful and, therefore, the evidence seized as the result of those searches, including the firearm which formed the basis for the indictment, should be suppressed. *See Wong Sun v. United States*, 371 U.S. 471 (1963).

Based on the foregoing and good cause appearing therefore,

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that Defendant Terrance Christopher's Motion to Suppress Evidence for Fourth Amendment Violation (#20) be **granted.**

## NOTICE

Pursuant to Local Rule IB 3-2 any objection to this Report and Recommendation must be in writing and filed with the Clerk of the Court within 14 days. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED: January 23, 2015.

_____
**C.W. Hoffman, Jr.
United States Magistrate Judge**